IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00785-PAB

BRANDI ROSS o/b/o Claudia Ross,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____

**ORDER**
_____

This matter is before the Court on plaintiff Brandi Ross' complaint [Docket No. 1], filed on March 28, 2012.  Brandi Ross, on behalf of her deceased mother Claudia Ross, seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying Claudia Ross' claim for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On June May 18, 2005, plaintiff[2] applied for supplemental security income and disability insurance benefits under Title II of the Act.  R. at 647.  Plaintiff alleged that she had been disabled since January 20, 2005.  *Id.*  After an initial administrative denial

_____

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

[2]References to "plaintiff" are to Claudia Ross unless otherwise indicated.

of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on July 18, 2006. *Id.* On August 19, 2006, ALJ Peggy Sue Ball issued a decision denying plaintiff's claim. *Id.* The Appeals Council granted plaintiff's request for review, setting aside the ALJ's decision, R. at 152, and, on June 12, 2007, a second hearing was held. R. at 599. On August 27, 2007, ALJ Ball issued an unfavorable decision. R. at 20-33. On February 13, 2009, plaintiff committed suicide. R. at 494, 572. Plaintiff's daughter, Brandi Ross, pursued her mother's disability insurance benefits claim as a substitute party, R. at 665,[3] and appealed the ALJ's decision to the District Court, *Ross v. Astrue*, No. 08-cv-01337-PAB. On September 3, 2009, the Court reversed and remanded the case. R. at 552-53. On July 7, 2010, a hearing was held before ALJ William Musseman.[4] R. at 630. The ALJ issued an unfavorable decision. R. at 372. On November 5, 2010, plaintiff appealed the ALJ's decision to the District Court, *Ross v. Astrue*, No. 10-cv-2709-JLK. The Commissioner filed an unopposed motion to remand the case and, on May 23, 2011, the District Court issued an order remanding the case. R. at 678; No. 10-cv-2709-JLK (Docket No. 18). Pursuant to the remand order,[5] on November 14, 2011, the ALJ held a hearing. R. at 754. On January 17, 2012, the ALJ

---

[3] Brandi Ross thereafter pursued plaintiffs disability insurance benefit claim as a substitute party. R. at 665.

[4] All references to "the ALJ" are to ALJ Musseman unless otherwise indicated.

[5] The ALJ indicates that the Appeals Council directed him to determine any limitations in plaintiff's upper extremities, re-evaluate the mental and physical residual functional capacity, develop the record concerning plaintiff's past relevant work, and obtain supplemental evidence from a vocational expert to determine plaintiff's ability to perform work in the national economy based on assessed limitations. R. at 648. Thus, it does not appear the final decision of the Commissioner before the Court is limited in any relevant way.

issued an unfavorable decision (the "ALJ's decision").  R. at 647-661.

The ALJ found that plaintiff had the following severe impairments up to the date

of her death: "depression, chronic myalgias of the right arm and shoulder, and

fibromyalgia."  R. at 651.  The ALJ concluded that these impairments, alone or in

combination, did not meet one of the regulations' listed impairments, *id.*, and ruled that

plaintiff had the residual functional capacity ("RFC"), from the alleged onset date until

her death to

> perform light work, as defined in 20 CFR 202.1567(b), except the claimant
> could perform no over chest level work with either upper extremity, and was
> limited to no complex tasks, as defined as involving a Specific Vocational
> Preparation (SVP) level of 3 or less.

R. at 652.  Based upon this RFC and in reliance on the testimony of a vocational expert

("VE"), the ALJ concluded that plaintiff was unable to perform any past relevant work up

to the date of her death, R. at 659, but that plaintiff was not disabled as "there were

jobs that existed in significant numbers in the national economy that the claimant could

have performed to the date of her death."  R. at 660.

Pursuant to 20 C.F.R. §§ 404.984(a) and 416.1484, the ALJ's decision is the

final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether

the decision is supported by substantial evidence in the record as a whole.  *See Angel*

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

#### 1.  Credibility

The ALJ considered multiple factors in finding that plaintiff's reporting of pain symptoms was not entirely credible, including that plaintiff led a "fairly active lifestyle" and continued to work and that plaintiff unilaterally discontinued treatment and stopped taking medications.  R. at 653, 655.   "Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Credibility determinations may not be conclusory, but must be "closely and affirmatively linked" to evidence in the record.  *Id.*  However, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] agency's findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations omitted).  The court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Id.*

In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

1.  The individual's daily activities;

2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). "Because a credibility assessment requires consideration of all the factors 'in combination,' when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support" the credibility determination. *Bakalarski v. Apfel*, 1997 WL 748653, at *3 (10th Cir. Dec. 3, 1997) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)). In addition, the Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

### a.  Daily Activities

Plaintiff challenges that ALJ's consideration of plaintiff's daily activities, arguing that the ALJ failed to consider evidence that contradicts his finding that plaintiff had a fairly active lifestyle.  Docket No. 14 at 24.  The ALJ found that

despite the claimant's allegedly disabling conditions, she was engaged in a fairly active lifestyle from her alleged onset date and to the date of her death.

Of note, in a function report, she indicated she lived independently alone, was able to prepare her food and perform household chores, could drive and walk a few blocks, and also go to church and sporting events. Additionally, although the claimant testified at both her July 2006 and June 2007 hearings that[] she had not engaged in any work activity following her alleged disability onset date, earnings records and her funeral notice contradict her statements. As previously mentioned, the claimant continued to work in the years following her alleged disability onset date, working in 2006 and 2007 for Walmart, in 2008 for a local school district, and in 2008 and 2009 for Apple, Inc. Although this work activity does not constitute disqualifying substantial gainful activity, it does suggest that her capabilities were greater than alleged from her alleged disability onset date and to the date of death, and she was capable of working within the parameters of the residual functional capacity, delineated above.

R. at 655 (citations omitted). Plaintiff argues that the function report referenced in the ALJ's decision contains evidence that contradicts the ALJ's finding, but which he did not discuss. Docket No. 14 at 25. The Court agrees. The function report indicates that plaintiff had good days, where, as the ALJ suggests, she could prepare food, do household chores, attend church, drive, and "walk a few blocks." R. at 237-42. However, the function report also indicates that plaintiff had bad days, where she could not bathe or dress herself, R. at 237-38, had difficulty preparing meals due to her arms or fingers "burning or aching," R. at 239, could not go out on her own when her arms, legs, and fingers were in pain, R. at 240, and could walk a few blocks with 10 or 20 minute breaks depending on her pain level. R. at 242. Although the ALJ is not required to discuss every piece of evidence, he must discuss "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ clearly found portions of the function report significantly probative so as to rely upon it, but did not acknowledge

those portions of the same report that contradict his conclusion.[6]  Although the ALJ's

finding that plaintiff could care for herself without limitation may be construed as an

implicit finding that plaintiff was not credible when describing her activities on days

when she was suffering from pain, the Court will not provide a post hoc justification for

the ALJ's decision.  *See Grogan*, 399 F.3d at 1263.  The ALJ's reliance on plaintiff's

statements concerning her activity level when her pain was not present, in the absence

of a discussion of those statements concerning her activity level when her pain was not

present, necessitates remand.  *See Borgsmiller v. Astrue*, 499 F. App'x 812, 819 (10th

Cir. 2012) (unpublished) (remanding case where ALJ improperly relied on plaintiff's

alleged ability to do household chores on "good days," when plaintiff was not

experiencing episodes of pain).

     Nor can the Court conclude that the ALJ's finding on this point is supported by

substantial evidence.  In arguing that the ALJ's finding on this factor was supported by

substantial evidence, the Commissioner also focuses solely on plaintiff's "good days."

Docket No. 19 at 23-24.  However, at a hearing in 2006, plaintiff also indicated that she

required assistance from family members in completing household chores.  R. at 725,

728.  On bad days, she could not lift her arms up, dress herself, or bathe.  R. at 729.  At

a minimum, the ALJ erred in failing to explain why he chose to reject such evidence,

and it would be improper for the Court to speculate about what the ALJ's reasons may

---

[6]The ALJ's lone acknowledgment of plaintiff's "bad days" appears to be in his discussion of Lisa Butler's consultative examination of plaintiff and is, by itself, insufficient to cure the above-identified error.  R. at 654.

have been. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).[7] Moreover,

to the extent the ALJ linked plaintiff's household activities to her RFC, the "sporadic

performance [of household tasks or work] does not establish that a person is capable of

engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490

(10th Cir. 1993).

Plaintiff also argues that the ALJ erred in his consideration of plaintiff's part time

work in 2005, 2006, and 2007. Docket No. 14 at 29. To the extent plaintiff argues that

her part time work was not substantial gainful activity, plaintiff's argument misses the

mark. The ALJ explicitly acknowledged that plaintiff's part time work "does not

constitute disqualifying substantial gainful activity." R. at 655. Plaintiff also argues that,

given her work history, plaintiff's ability to work only part time actually supports her claim

of disability. Docket No. 14 at 29. To some extent, plaintiff's argument is an invitation

to re-weigh the evidence, which the Court cannot do. However, plaintiff's argument can

also be construed as an attack on the ALJ's finding that plaintiff's work activity

"suggest[ed] that her capabilities were greater than alleged." R. at 655. On this point,

plaintiff's argument finds support. The ALJ's decision states simply that plaintiff

"continued to work in the years following her alleged disability onset date," R. at 655

and "was able to work," R. at 656, but does not discuss how much she worked or the

circumstances under which was not able to work. For example, plaintiff testified that

she missed work on "a lot of days" because she was in too much pain to drive, R. at

---

[7]The ALJ's statement that he considered "all of the claimant's prior testimony concerning her limitations" is insufficient to explain why he relied on some portions of the function report, but implicitly rejected others. *See* R. at 659.

722, and, in 2006, was having difficulty working a part time job for four hours a day.  R. at 725.  On days when she was forced to miss work, plaintiff testified that she was unable to drive or dress herself and could not lift her arms or walk.  R. at 729.  Tingling and numbness in her hands would cause her to drop things such as telephones or knives when cooking.  R. at 730.  By not including a limitation in the RFC related to missing days of work, the ALJ implicitly rejected such evidence, but failed to explain why he did so.  The VE's testimony indicated that someone who misses two or more days of work per month may have difficulty maintaining employment.  R. at 751 ("If an individual exceeds [one and a half to two days per month], they are generally released if it's habitual.").  As such, the Court cannot conclude that the ALJ's error on this issue was harmless.  The Court finds that, in evaluating plaintiff's credibility, the ALJ erred in considering plaintiff's daily activities.

### b.  Medication and Treatment

Plaintiff argues that the ALJ erred in considering factors related to medication and treatment.  Docket No. 14 at 30.  The ALJ found that the treatment records reflected that her pain was controlled with medication and suggested "compliance issues in taking medication as prescribed."  R. at 656.  The ALJ found that the record evidenced gaps in treatment, where plaintiff was not being prescribed medications, including the fact that plaintiff was not prescribed medications in the two years prior to her death.  *Id.*

The Court first turns to medication and treatment plaintiff received for her pain before February 2006, while she was primarily under the care of Peter Brumlik, a physician's assistant.  On February 23, 2004, Mr. Brumlik noted that plaintiff was taking

11

Lexapro, Neurontin, amitriptyline, and Humibid.  R. at 310.  On March 29, 2004, plaintiff

reported to Mr. Brumlik that she had been taken off of Neurontin, amitriptyline, and

Humibid with no change in plaintiff's pain profile.  R. at 308.  Mr. Brumlik placed plaintiff

on methadone.  *Id.*  On April 19, 2004, plaintiff had an allergic reaction to methadone

and reported that one out of three days is "horrible" and one out of three days is

"bearable."  Mr. Brumlik suggested that plaintiff begin using fentanyl patches.  R. at

307.  On May 3, 2004, plaintiff reported that the fentanyl patches provided good results,

which appear to have continued until October of 2004.  R. at 305-06.  Plaintiff again

reported recurring problems with her right arm and Mr. Brumlik suggested she be put on

methadone, but only 5mg at one time.  R. at 304.  On January 28, 2005, plaintiff visited

Mr. Brumlik complaining that, although methadone was effective, it made her sleepy

and she stopped taking it.  R. at 302.  Plaintiff expressed a willingness to try methadone

again, and Mr. Brumlik suggested that she avoid taking methadone during the day

unless she felt pain.  *Id.*  The note from this visit also states that Dr. Sandell gave

plaintiff "a series of trigger point injections," but that the injections made plaintiff ill and

she did not again receive them.  *Id.*  On March 1, 2005, plaintiff reported that

methadone was adequately controlling her pain and Mr. Brumlik wrote a prescription for

30 tablets and increased her Lexapro dosage.  R. at 303.  On May 13, 2005, plaintiff

reported that she had again developed an allergic reaction to methadone and was

prescribed a fentanyl patch.  R. at 301.  On May 24, 2005, plaintiff reported that the

fentanyl patches were working and Mr. Brumlik prescribed Ambien based upon

plaintiff's difficulty sleeping.  R. at 299.  On August 18, 2005, Mr. Brumlik noted that

plaintiff continued to use fentanyl patches, but also noted that plaintiff's attempts to

return to work were unsuccessful.  R. at 365.  On September 19, 2005, Mr. Brumlik's

note indicates that plaintiff was again placed on methadone.  R. at 364.  On October

19, 2005, Mr. Brumlik noted that plaintiff was being managed with 5mg of methadone.

R. at 363.

The ALJ found that plaintiff's pain was controlled by prescribed medications

while under Mr. Brumlik's care.  R. at 653.  Plaintiff disputes this finding by arguing that,

because she suffered side effects from the prescribed medications, the ALJ's

conclusion was in error.  Docket No. 14 at 30.[8]  The Court finds that Mr. Brumlik's

notes support the ALJ's conclusion on this point.  Evidence that plaintiff suffered

medication side effects does not overwhelm that conclusion.  *See Wall v. Astrue*, 561

F.3d 1048, 1052 (10th Cir. 2009) ("[e]vidence is not substantial if it is overwhelmed by

other evidence in the record").[9]

The ALJ also found plaintiff's allegations of pain suspect because plaintiff

unilaterally discontinued treatment and medication during her time under Mr. Brumlik's

care.  R. at 653.  Plaintiff challenges this finding as well.  The Court first considers the

_____

[8]Plaintiff argued that the ALJ erred in failing to apply the *Frey* test, which requires the ALJ to consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."  *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).  However, as noted in *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), the *Frey* test only applies when the ALJ denies benefits for failure to follow prescribed treatment and need not be applied where, as here, the ALJ evaluates the medication and treatment with respect to credibility.

[9]However, the side effects plaintiff suffered from medications that controlled her pain may be relevant to her ability to perform work while on those medications.  As noted below, the ALJ failed to acknowledge the medication-related side effects plaintiff reported.  Thus, the Court cannot determine whether the ALJ considered such evidence in forming plaintiff's RFC.

question of whether substantial evidence exists to show that plaintiff did in fact discontinue treatment of her own accord. With respect to plaintiff's pain, the ALJ noted that plaintiff received pain treatment from Dr. Lawrence Zyskowski, a rheumatologist, in 2003. *Id.* The record indicates that plaintiff stopped seeing Dr. Zyskowski in 2003. R. at 271. From November 2004 to January 2005, plaintiff received limited treatment from Dr. Timothy Sandell, a pain medicine specialist, and from Mr. Brumlik. R. at 653 The record indicates that plaintiff stopped seeing in Dr. Sandell in 2005. R. at 653. Mr. Brumlik treated plaintiff from 2004 until Mr. Brumlik retired in February 2006. R. at 653. With respect to Mr. Brumlik, there appears to be one instance where plaintiff discontinued methadone of her own accord, R. at 302, but the other instances which the Commissioner cites in support of the ALJ's conclusion do not support the conclusion that plaintiff unilaterally discontinued medication multiple times while under Mr. Brumlik's care. Docket No. 22-23 (citing R. at 299, 303, 305, 363). Thus, based upon the incidents identified by the ALJ, the evidence indicates that, prior to 2006, plaintiff discontinued treatment or medication in three instances.

The ALJ implicitly concludes that plaintiff's discontinuation of treatment or medication creates the inference that plaintiff's symptoms were not as severe as claimed. R. at 653. When considering a plaintiff's failure to pursue treatment, the ALJ

> must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*See* SSR 96-7P, 1996 WL 374186, at *7. The Court first turns to plaintiff's failure to pursue treatment with Dr. Zyskowski. Dr. Zyskowski's treatment, as opposed to general

14

examinations, occurred roughly two years before the claimed disability date and was

directed entirely at resolving right shoulder pain.  R. at 271-280.  As such, it is not clear

from the record what bearing this has on the credibility of plaintiff's allegations that she

suffered from fibromyalgia-related pain throughout her body after the alleged onset date

in January 2005.  Thus, the Court finds that plaintiff's failure to continue treatment with

Dr. Zyskowski has no relevant relationship to the allegations giving rise to plaintiff's

claim for disability.  As for Dr. Sandell's treatment, plaintiff stopped seeing Dr. Sandell

after she received trigger point injections, injections that made plaintiff physically sick.

R. at 723; *see also* R. at 285 (Dr. Sandell: "I am certainly suspicious [that] the [trigger

point injections] were causing side effect of nausea.  Therefore, we will not continue

with any further . . . injections.").  There is no indication that the ALJ considered this

evidence in reaching his conclusion regarding plaintiff's failure to pursue treatment with

Dr. Sandell.  With regard to the single instance where plaintiff discontinued methadone

use, the record contains evidence that fentanyl made plaintiff tired, nauseous, dizzy, or

sick, R. at 226, 235, 317, and that methadone caused her to become dizzy, nauseous,

and fatigued to the point that she slept 12 to 14 hours per day.  R. at 235, 254, 724.

Many of these side effects were reported to Mr. Brumlik and they do not appear to be

disputed in the record of the ALJ's decision.  *See, e.g.*, R. at 307.  In the instance

where plaintiff stopped using methadone while under Dr. Brumlik's care, her stated

reason was because methadone made her drowsy.  R. at 302.  There is no indication

that, in making a negative credibility inference based upon plaintiff's discontinuation of

methadone, the ALJ considered the explanation that methadone side effects led to

plaintiff's failure to pursue this particular treatment.  To the contrary, the ALJ failed to

indicate that he considered any of the reported side effects of medication in his credibility determination or, for that matter, in his determination of plaintiff's RFC.  *See* SSR 96-7P, 1996 WL 374186, at *7.  Thus, the Court concludes that the ALJ's credibility determination was in error for improper consideration of plaintiff's medication and treatment history prior to February 2006.

Although the ALJ considered other factors, including plaintiff's failure to pursue treatment or take medication for her pain in the time leading up to her death and the lack of objective examination findings regarding the severity of plaintiff's pain, the Court cannot "weigh[] the remaining factors to determine whether they, in themselves, are sufficient to support" the ALJ's credibility determination.  *Bakalarski*, 1997 WL 748653, at *3.  As such, the Court need not reach plaintiff's remaining arguments.

## III.  AWARD OF BENEFITS

The decision to award benefits is a matter of discretion.  *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).  Relevant factors include the amount of time the claim has been pending and whether remand for additional fact finding would "serve [any] useful purpose but would merely delay the receipt of benefits."  *Id.* (quotation omitted).  More than nine years have elapsed since plaintiff filed her original claim for disability and the Commissioner's decision has been twice remanded by the District Court.  *See Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) ("The Secretary is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.").  Moreover, given the fact that plaintiff is deceased, there is little indication that further relevant fact

finding concerning plaintiff's credibility is possible.  Thus, the Court concludes that an award of benefits is warranted.  *See Salazar*, 468 F.3d at 626.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the January 17, 2012 decision of the Commissioner that plaintiff was not disabled is REVERSED.  It is further

**ORDERED** that this case is remanded for an award of benefits.


DATED March 9, 2015.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge